**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RICHARD JALONACK,<br><br>                Plaintiff,<br><br>v.<br><br>NEWARK BETH ISRAEL MEDICAL<br>CENTER and SAINT BARNABAS<br>HEALTH CARE SYSTEM,<br><br>            Defendants. | Civil Action No.:08-5443(KSH)<br><br><br>**Return Date:**<br>  **December 7, 2009**<br><br>  *(Electronically Filed)*<br>  ORAL ARGUMENT REQUESTED |

---

**DEFENDANTS' BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

---

APRUZZESE, McDERMOTT,
  MASTRO & MURPHY
25 Independence Boulevard
P.O. Box 112
Liberty Corner, NJ  07938
Tel.(908) 580-1776
FAX (908) 647-1492
Attorneys for Defendants

*Mark J. Blunda, Esq.*
 *Of Counsel and On the Brief*

*Sara K. Peterson*, Esq.
   *On the Brief*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.......................................ii

PRELIMINARY STATEMENT.......................................1

STATEMENT OF MATERIAL FACTS................................5

LEGAL STANDARD FOR SUMMARY JUDGMENT.......................20

LEGAL ARGUMENT............................................21

    POINT I
    PLAINTIFF'S FMLA CLAIM FAILS SINCE IT IS
    IRREFUTABLE THAT HE RECEIVED THE 12-WEEK
    LEAVE OF ABSENCE FOR SELF CARE THAT HE IS
    ENTITLED TO UNDER THE ACT.............................21

    POINT II
    PLAINTIFF'S NJLAD DISABILITY DISCRIMINATION CLAIM
    FAILS SINCE IT IS UNDISPUTED THAT TWO EXAMINING
    DOCTORS DETERMINED THAT HE WAS NOT HANDICAPPED AND
    PLAINTIFF TESTIFIED THAT HE WAS NOT DISABLED........26

    1. Plaintiff is not an individual with a handicap
       under the NJLAD ..................................29

    2. Plaintiff was not performing at a level that
       met his employer's legitimate expectations. ......31

    3. Even if Plaintiff could establish a *prima facie*
       case of disability discrimination, he cannot
       establish that the stated reasons for him not being
       permitted to return to work on March 20, 2008 are
       pretextual ......................................33

    POINT III
    PLAINTIFF FAILS TO ESTABLISH A CLAIM OF FAILURE
    TO REASONABLY ACCOMMODATE A DISABILITY SINCE (1)
    HE WAS NOT DISABLED; (2) HE DID NOT REQUEST AN
    ACCOMMODATION; AND (3) IGNORING MISCONDUCT IS NOT
    A REASONABLE ACCOMMODATION...........................35

CONCLUSION...............................................38

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

<u>Anderson v. Exxon Co.</u>, 89 N.J. 483 (1982)...........27,28,29

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986)......20

<u>Barbera v. DiMartino</u>, 305 N.J. Super. 617
(App. Div. 1997)........................................37

<u>Bergen Commercial Bank v. Sisler</u>, 157 N.J. 188
(1999).................................................28,29

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).............20

<u>Churchill v. Star Enters.</u>, 183 F.3d 184 (3d Cir. 1999)....22

<u>Clowes v. Terminix Int'l, Inc.</u>, 109 N.J. 575 (1988).......27

<u>EEOC v. MCI Int'l, Inc.</u>, 829 F. Supp. 1438
(D.N.J. 1993)...........................................29

<u>Fuentes v. Perskie</u>, 32 F.3d 759 (3d Cir. 1994)...........35

<u>Greenberg v. Camden Voc. Schools</u>, 310 N.J. Super.
189 (App. Div. 1998)...................................35

<u>Jones v. Aluminum Shapes</u>, 339 N.J. Super. 412
(App. Div. 2001)........................................37

<u>Kearny Generating Sys. Div. v. Roper</u>, 184 N.J. Super. 253
(App. Div.), <u>certif.</u> <u>denied</u>, 91 N.J. 254 (1982)..........28

<u>LaResca v. American Tel. & Tel.</u>, 161 F. Supp. 2d 323
(D.N.J. 2001)...........................................27

<u>Maher v. New Jersey Transit Rail Operations, Inc.</u>,
125 N.J. 455 (1991).....................................27

<u>McDonnell Douglas Corp. v. Green</u>, 93 S. Ct. 1817
(1973).................................................27,28

<u>Palen v. Alcan Packaging</u>, 511 F. Supp. 2d 445
(D.N.J. 2007).........................................23,24

Parker v. Hahnemann University Hospital, 234 F. Supp.
2d 478 (D.N.J. 2002)................................21,22,23

Ragsdale v. Wolverine World Wide Inc., 535 U.S. 81
(2002).............................................23,25

Reilly v. Prudential Property and Casualty Inc. Co.,
653 F. Supp. 725 (D.N.J. 1987)...........................28

Rinehimer v. Cemcolift, Inc., 292 F. 3d 375
(3d Cir. 2002).......................................22,23

Seiden v. Marina Associates, 315 N.J. Super. 451
(Law Div. 1998)..........................................28

Sommer v. The Vanguard Group, 461 F.3d 397
(3d Cir. 2006)...........................................22

St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2474 (1993)....29

Svarnas v. AT&T Communications, 326 N.J. 59
(App. Div. 1999).........................................27

Texas Dep't of Comm. Affrs. v. Burdine, 101 S. Ct. 1089
(1981)...................................................28

Theodossiou v. Commerce Bank, N.A., 2009 WL 2382218
(D.N.J. 2009)............................................23

Tynan v. Vicinage 13 of the Superior Court, 351 N.J.
Super. 385 (App. Div. 2002)..............................36

Vande Zande v. State of Wis. Dep't of Admin.,
851 F. Supp. 353 (W.D. Wis. 1994).....................36,37

Victorelli v. Shadyside Hospital, 128 F.3d 184 (3d Cir.
1997)....................................................21

## Rules

R. 56(c)..................................................20

R. 56(e)..................................................20

Statutes and Regulations

N.J.A.C. 13:13-2.5(b)....................................36

N.J.S.A. 10:5-1.........................................26

N.J.S.A. 10:5-4.1.......................................26

N.J.S.A. 10:5-5(q)...................................30,31


29 U.S.C. §2601.........................................21

29 U.S.C. §2612 (a)(1)..................................22

29 U.S.C. §2614(a)(1)...................................22

29 C.F.R. §825.101......................................21

29 C.F.R. §825.200(a)................................22,25

**<u>PRELIMINARY STATEMENT</u>**

This is an employment case that proves the old adage that "no good deed goes unpunished."

In year 2000 Newark Beth Israel Medical Center hired Plaintiff to serve as its Administrative Director of Radiology. He performed well.   Unfortunately, in October of 2004 Mr. Jalonack suffered a cerebral hemorrhage that incapacited him. The Medical Center held his position open until he was determined to be fit to return to work some 5½ months later.

After Plaintiff returned from the stroke, his job performance declined noticeably.   Most problematic was erratic behavior that was brought to the attention of management through employee and union complaints.   The incidents escalated to the point that between February and May of 2007 the Medical Center's management received a series of written complaints and witness statements documenting Mr. Jalonack's verbal abuse, physical tirades, throwing employees' lunch pails on the floor, punching a locker, embarrassing employees in front of patients and throwing a clip board that hit an employee.   When confronted by management with these altercations, Plaintiff admitted most of them and apologized for his behavior.

Following the May 2007 incident, the Medical Center's management advised Mr. Jalonack that they were referring him for

1

neuropsychological evaluation to determine his fitness for duty. He agreed.

Plaintiff was first evaluated by a stroke neurologist. She, in turn, referred him for neuropsychological evaluation. By September of 2007, the Medical Center had received two reports, both of which indicated that Richard Jalonack was fit to perform the duties of the Administrative Director of Radiology without limitation.

On October 2, 2007, Mr. Jalonack had yet another altercation with a subordinate employee in the presence of patients and their families. A patient's family member who witnessed the altercation, wrote a statement to the Medical Center indicating that she had not only observed Plaintiff's inappropriate conduct, but that he had yelled at her as well.

After this incident had been investigated, Plaintiff was suspended. Vice President Lipner then met with Plaintiff and advised him that his conduct warranted termination and he could no longer work at Newark Beth. Vice President Lipner told Plaintiff that because of his past service to the Medical Center, it was willing to allow him to follow a path of departure whereby he would move onto short term disability and then exit on long term disability rather than be terminated for misconduct. Plaintiff did not disagree, left the Medical Center

and applied for short term disability benefits effective October 12, 2007.

Plaintiff received written notification that he was placed on a medical leave of absence for self-care under the Family Medical Leave Act and that he would have 12-weeks of job protected leave until January 4, 2008. Plaintiff was granted short term disability, received the payments and made no effort to return to work prior to the expiration of his 12-weeks of FMLA job protected leave. On January 8, 2008 the Medical Center posted an advertisement for candidates for Administrative Director of Radiology. On March 7, 2008 it hired a replacement.

On March 20, 2008, without notifying anyone from the Human Resources' Department, Plaintiff presented himself at the Hospital's Employee Health Department with a return to work note from his doctor. Unaware of the prior incidents and HR's agreement with Mr. Jalonack, the Employee Health Department cleared him to return to work. He then proceeded to the Radiology Department, again, without notifying the Human Resources' Department. When the Medical Center's management was alerted to Plaintiff's maneuver, he was told to go home. In April of 2008, when the 26-weeks of short term disability expired, Mr. Jalonack was removed from the employee rolls.

Plaintiff subsequently filed the instant action alleging violation of his rights under the Family Medical Leave Act and

disability discrimination.   In the course of discovery, it was learned that Mr. Jalonack never filed the appropriate papers for long term disability insurance.   Furthermore, when his treating psychiatrist would not issue a return to work certification for him, Plaintiff went to a new psychiatrist.   In response to the Complaint, the Medical Center filed a counterclaim for Plaintiff's breach of agreement.

It is Defendants' position that Plaintiff's FMLA claim is meritless since he received his 12-weeks of job protected leave and made no effort to return to work before that expired.   As for Plaintiff's disability discrimination claim, the record is undisputed that he was evaluated by two independent medical experts who found him fit to perform the duties of Director of Radiology without limitation.   Furthermore, Plaintiff testified that he is not disabled, can perform all functions of the job and never requested any accommodation. Consequently, he is not an individual with a handicap entitled to the protections of the New Jersey Law Against Discrimination.   Furthermore, the actions taken against him by the Medical Center were a result of his inappropriate behavior and misconduct, the record of which is undisputed.   Therefore, Defendants submit that they are entitled to summary judgment dismissing Plaintiff's Complaint in its entirety.

## STATEMENT OF MATERIAL FACTS

Since this is a motion for summary judgment, Defendants rely upon the Undisputed Material Facts.[1]

### Plaintiff's Employment and 2004 Stroke

Plaintiff, Richard Jalonack, commenced employment at Newark Beth Israel Medical Center on March 6, 2000 in the position of Administrative Director of Radiology. PT 19.12.

On or about October 19, 2004, Plaintiff suffered a cerebral hemorrhage.  PT 21.9.  As a consequence, he was out of work for approximately 5½ months.   Following his recovery in 2005, Plaintiff was allowed to returned to the Medical Center in the same position of Administrative Director of Radiology and without limitations.  PT 21.14.

### Chronology of Altercations with Employees and Patients

In February of 2007, Plaintiff initiated a confrontation with subordinate employees regarding their lunch bags.  PT 23.8. Plaintiff threw the employees' lunch containers on the floor because they had placed them on a linen cart.  PT 23.16. There were multiple witnesses to the incident, including the union delegate Glenwood Smith. PT 24.16. A number of employee witnesses to the altercation wrote statements that Mr. Jalonack

---

[1] References to Plaintiff's April 29, 2009 deposition testimony are cited as "PT" and appear at Exhibit "2" to the Certification of Mark J. Blunda, Esq.

had not only been verbally abusive, but punched a locker. Lipner Cert. at Exh. Tab 1.

The written statement from Radiology Department employee Brandon Harley regarding the February 2, 2007 incident indicated that Plaintiff side-punched a locker and threw an employee's lunch pail breaking a bottle. Lipner Cert. at Exh. Tab 1; Jalonack Dep. Exh. 1.

The written statement from Radiology Department employee Latasha Walker regarding the February 2, 2007 altercation indicated that Plaintiff was "banging lockers like a tyrant." Lipner Cert. at Exh. Tab 1; Jalonack Dep. Exh. 2.

The statement submitted by Radiology Department employee Megan James indicated, among other things that "on any given day, the staff of the Radiology Department is subject to violent outbursts." Lipner Cert. at Exh. Tab 1; Jalonack Dep. Exh. 3.

In her written statement, Radiology Department Yolene Baron stated that "this enraged and out of control behavior has happened on several occasions." Lipner Cert. at Exh. Tab 1; Jalonack Dep. Exh. 4.

The statement from Glenwood Smith, Radiology Department employee and union steward, indicated, among other things that this type of conduct by Plaintiff "has occurred numerous times." Lipner Cert. at Exh. Tab 1; Jalonack Dep. Exh. 5.

Plaintiff's immediate supervisor, Kenneth Tyson, Chief Operating Officer and Senior Vice President, spoke to Plaintiff regarding the incident. PT 25.15. Plaintiff admitted to the altercation. PT 25.12. On February 16, 2007, Plaintiff sent an e-mail to Kenneth Tyson and Zachary Lipner admitting that he lost his temper toward subordinate employees on February 2, 2007, that he "threw the lunch holders on the floor," and he apologized "for my outburst and recognized my mistake." PT 26; Lipner Cert. at Exh. Tab 1. In deposition, Plaintiff admitted that he raised his voice, threw the lunch pails on the floor, but stated that he "tapped a locker for emphasis," rather than punched it. PT 23.23; 24.7.

On February 28, 2007, Craig Ford, Vice President of the employee's union, wrote to Sidney Seligman, Senior Vice President of Human Resources for the Saint Barnabas Health Care System, complaining about Mr. Jalonack's conduct and indicating, among other things, that "this is not the first time that he [Richard Jalonack] has demonstrated this unprofessional behavior, which creates a hostile situation." Lipner Cert. at Exh. Tab 3; Lipner Dep. Exh. 2. Zachary Lipner, Vice-President of Human Resources at Newark Beth, advised Mr. Seligman that the matter was being addressed internally at Newark Beth. Neither Sidney Seligman, Newark Beth Israel Medical Center nor the Saint

Barnabas Health Care System took formal disciplinary action against Plaintiff.  PT 36.20.

On April 13, 2007, Radiology Tech Ramon Franciledo lodged a written complaint with the management complaining that Mr. Jalonack walked in on a radiology test and embarrassed Mr. Franciledo in the presence of a patient and family members. Lipner Cert. at Exh. Tab 5. Vice President Lipner spoke to Mr. Jalonack regarding the incident.  PT 46. Plaintiff acknowledged that he was wrong, that he mishandled the situation and that it was inappropriate to allow a patient to overhear comments he made to a technician.  PT 46.17.

On May 2, 2007 Plaintiff initiated an incident with Radiology Department employees James Shaw and Chris Carfano in a public area of the hospital.  PT 48; Lipner Cert. at Exh. Tabs 6 and 7; Lipner Dep. Exh. 4. Employee James Shaw gave a statement to Human Resources indicating that Jalonack stated publicly that "I'm tired of this shit, when he [Shaw] gets his ass back tell him I want him in my office." Lipner Cert. at Exh. Tab 6. Mr. Shaw and co-worker Carfano stated that Plaintiff "flung the clipboard" and that it hit Carfano. According to the employee statements, patients saw and heard the incident.  Lipner Cert. at Exh. Tabs 6 and 7; Lipner Dep. Exh. 4.

In deposition Plaintiff denied that he flung the clipboard and says that it slipped out of his hands. He testified that he does not know if the clipboard hit Mr. Carfano.  PT 50.8.

**Referral for Independent Medical Evaluation**

In May of 2007, Vice President Lipner and Chief Operating Officer Tyson met with Plaintiff and requested that he undergo testing "because of these issues." PT 51.14. 44. According to Plaintiff, there was no doubt in his mind what the issues were. Plaintiff's deposition testimony was that he felt he had become less tolerant of other's mistakes.  PT 52.21 – 53.17. At the May, 2007 meeting Zachary Lipner summarized the events and said he felt that Plaintiff's responses may have been due to his stroke and they wanted Mr. Jalonack evaluated by a stroke specialist. PT 52.3. Plaintiff agreed to submit to neurological and psycho-neurological testing.  PT 51.19. Plaintiff thought that Mr. Lipner wanted him evaluated to know if he could do the job.  PT 55.24 – 56.

In May of 2007, Plaintiff underwent a physical evaluation by stroke specialist/neurologist Dr. Anna Khanna.  PT 59.3. Dr. Khanna recommended that Plaintiff then be evaluated by Dr. Robert Hill, a neuro-psychologist from the University of Medicine and Dentistry of New Jersey.  PT 59.8.

**Unconditional Medical Clearance Without Limitations**

Plaintiff received a copy of Dr. Khanna's written report which concluded that from a physical standpoint he was able to perform the functions of the job of Director of Radiology.    PT 60.13; 62.1.    Dr. Khanna's Impressions as stated at the conclusion of her report [Blunda Cert. at Exh. 3; Lipner Dep. Exh. 5 – D0237] included the following:

> On examination, the patient does not have any significant limitations that might limit his ability to perform his duties as Director of Radiology at Newark Beth Israel.

As a consequence of Dr. Khanna's referral, Plaintiff was evaluated by Dr. James Hill, a neuro-psychologist.    PT 66.24 – 67.1. According to the report, the evaluation by Dr. Hill was "to determine if there is an underlying neuropsychological/ psychiatric condition that might impede his ability to function in his current position."    Blunda Cert. at Exh. 4; Lipner Dep. Exh. 6 at D0224. Plaintiff testified that the evaluation by Dr. Hill "lasted two months" and "was a physical evaluation as well as a neuropsychological evaluation."    PT 67.2.

In September of 2007 Dr. Hill issued a written report that included a conclusion that:

> As it relates to the incidents that precipitated this referral, there is no evidence of a neuropsychological or psychiatric problem that would make him a risk for behavior problems.

Blunda Cert. at Exh. 4, p. 11.

The summary and conclusion of Dr. Hill included the following statement.

> The results of the current assessment as detailed above found **NO EVIDENCE OF A NEUROPSYCHOLOGICAL OR PSYCHOLOGICAL IMPAIRMENT THAT WOULD IMPACT MR. JALONACK'S ABILITY TO FUNCTION IN HIS CURRENT POSITION.**

Id.

57.   The Dr. Hill report further concluded that:

> There is no need for any further neuropsychological or psychological treatment or intervention with Mr. Jalonack, he has had a remarkable and impressive recovery from his stroke.

Id.

In the early Fall of 2007 Human Resources Vice President Lipner and Chief Operating Officer Tyson met with Richard Jalonack to review with him the results of the evaluation reports by Drs. Khanna and Hill and the fact that they found no psychological or physical reason that he could not perform his job.  PT 72.9 – 74.

**No Claim of Handicap or Request for an Accommodation**

Plaintiff never indicated to Mr. Lipner or Mr. Tyson that he was unable to do his job in any respect.  PT 74.21.

In none of his meetings with Mr. Lipner or Mr. Tyson did Plaintiff indicate that he needed any kind of special assistance in order to perform his job.  PT 74.25 – 75.3.

In none of his meetings with Mr. Lipner and Mr. Tyson did Plaintiff indicate that he was taking medication that made him unable to fully perform his job.  PT 75.4.

The verbatim testimony from Plaintiff in this regard is as follows:

> Q.   In either of those meetings, did you indicate that you were unable to do you job in any respect?
> A.   No.
>
> Q.   In any of those meetings, did you indicate that you needed any kind of special assistance in order to perform your job?
> A.   No.
>
> Q.   In any of those meeting, did you indicate that you were taking medication that made you unable to fully perform your job?
> A.   No.

PT 74.21 – 75.7.

## October 2, 2007 Incident with Employee and Patient's Family

On October 2, 2007 Plaintiff had an incident with Radiology Department employee Latasha Walker in a public area of the Medical Center. PT 81-82. According to Plaintiff, the discussion between him and this subordinate employee escalated to the point that a patient's daughter heard the conversation down the hall. PT 82.4.  Plaintiff testified that he and Ms. Walker raised their voices and were "sort of yelling." PT 82.13.  The daughter

of the patient who witnessed the incident told Jalonack that she thought his conduct was very unprofessional.  PT 86.19.

Upon learning of the incident, the management of Newark Beth took statements from the employee witnesses.  Lipner Cert. at Exh. Tab 8. The daughter of the patient who witnessed the altercation, sent a multi-page letter to the Hospital criticizing Plaintiff's "unprofessional" behavior.  Lipner Cert. at Exh. Tab 9 The customer's statement indicated the Plaintiff yelled at the employee and put his finger in her face. The patient's daughter then reported stated that Jalonack approached her and yelled at her. Id.

**Suspension and Medical Leave of Absence on October 12, 2007**

Mr. Tyson sent an e-mail to Plaintiff asking him to explain the incident.  PT 87.3.  According to Plaintiff, on Friday, October 12, 2007 Mr. Lipner and Mr. Tyson met with Plaintiff and told him that he was suspended and had to go home while they looked into the issue further.  PT 90.7 – 91.2.

According to Plaintiff, he was called at home over the weekend by Mr. Lipner's secretary and told that he had to meet with Mr. Lipner on October 15, 2007.  PT 91.13 – 92.
During the October 15, 2007 meeting Mr. Lipner explained that because of Plaintiff's work history they were suggesting a path whereby Plaintiff would go on short term disability and then

long term disability, if his physician supported it, in lieu of being terminated.  PT 93-99.

Plaintiff testified that Mr. Lipner followed up with a call to Plaintiff in which he stated that "since you're going on short term disability, termination was not considered."  PT 96.9. The following testimony was given by Plaintiff in this regard:

> Q.   He said that since you had agreed to take the short term disability, they weren't pursuing the termination route?
> MR. RESNICK:  Objection to form.
> A.   I don't remember the exact words he used, but he did use the word termination.
>
> Q.   That they were not going to do the termination?
> A.   They were not going to terminate me. That was an alternative that they weren't going to pursue.
>
> Q.   Because you were doing short term disability.
> MR. RESNICK:  Objection to form.
> A.   I don't remember.  I- -I don't know for sure that's what he said.
>
> Q.   But that's your recollection. My notes say, since you're going on short term disability, termination is not being considered.
> MR. RESNICK:   Objection to form.  You can answer.
> A.   Okay, yes.
>
> Q.   No.  I'm not trying to put words in your mouth.  Is that what he said?
> A.   Yeah.

PT 98.3 – 99.3.

14

According to Plaintiff, he had a prearranged meeting with Zachary Lipner and Kenneth Tyson on October 17, 2007 for a recapitulation and understanding of his status.  PT 99.8.  At that meeting Mr. Jalonack was told "There's no job for you to come back to in Radiology at Newark Beth."  PT 100.21; 77.2. Plaintiff testified that he just listened, smiled and "said thank you."  PT 100.24 – 101.25.

After the October 17, 2007 meeting, Plaintiff had no further communications with Mr. Lipner or Mr. Tyson.  PT 103.10. Plaintiff applied for and received short term disability payments from the State of New Jersey commencing October of 2007.  PT 119. Plaintiff's short term disability application was supported by certification from Plaintiff's psychiatrist Dr. Nam.  PT 123.13.

During the October 17, 2007 meeting, Mr. Lipner gave Plaintiff the contact information for Patrick Donahue, who was in charge of benefits at the Saint Barnabas Health Care System and could assist him with the long term disability insurance policy.  PT 92.11.  Plaintiff contacted Patrick Donahue during the week of October 15, 2007.  PT 103.15.  However, according to Plaintiff, he never filled out an application for long term disability.  PT 108.5.

**12 Weeks of Job-Protected FMLA Leave**

On November 13, 2007 Newark Beth Israel Medical Center
Department of Human Resources sent Plaintiff a letter confirming
that he was on family medical leave with job protection for 12-
weeks that expired January 4, 2008.  Lipner Cert. at Exh. Tab
10; Lipner Dep. Exh. 14. Plaintiff did not communicate with
either Mr. Lipner or Mr. Tyson prior to January 4, 2008 and was
not deemed fit to work by his physician prior to that date. PT
103; PT 110.19.

**Posting of Job Opening and Hiring a Replacement**

On January 8, 2008, the Medical Center posted an
advertisement for the position of Administrative Director of
Radiology.  Lipner Cert. at Exh. Tab 11. In February it
interviewed applicants, including Stephanie Spencer. Lipner
Cert. at Exh. Tabs 12 & 13. On March 4, 2008, Newark Beth
extended a job offer to Stephanie Spencer.  On March 7, 2008 she
accepted employment as the new Administrative Director of
Radiology. Id.

According to Plaintiff, he had remote access from his home
computer to e-mails from Newark Beth Israel Medical Center until
February of 2008, when he was removed from access to the system.
PT 116.7 – 118. Thereafter, his password no longer worked on the
computer system.  PT 117.24 – 118.4.

Plaintiff did not contact HR Vice-President Lipner, his immediate supervisor, Ken Tyson, or anyone else from the administration of Newark Beth Israel Medical Center about the cancellation of his computer access in February of 2008.   PT 118.

## Unannounced Appearance at Employee Health on March 20, 2008

On March 20, 2008 Plaintiff appeared unannounced at the Employee Health Department of Newark Beth Israel Medical Center. PT 110.2.  Plaintiff spoke to a receptionist and produced a script from a Dr. Bruce Schweiger that he was able to return to work as of that day.  PT 110.5.  According to Plaintiff, March 20, 2008 was the first date that he was cleared by his physician to return to work.  PT 110.19.

Plaintiff did not contact Mr. Lipner or anyone from the Human Resources Department or Medical Center before appearing at Employee Health on March 20, 2008.   PT 109.8.   According to Plaintiff, Vice President Lipner had previously said "There's no job to come back to."   PT 112.15.   Between Plaintiff's suspension in October of 2007 and the date of March 20, 2008, no one from the management of Newark Beth Israel Medical Center authorized Plaintiff to do anything with regard to the Radiology Department of the Medical Center. PT 112.2.

After reporting to the Employee Health Department on March 20, 2008, Plaintiff went to the Radiology Department of the

17

Medical Center and spoke with Radiology Department employee Tony Snarski.  PT 111.  Mr. Snarski contacted Senior Vice President Tyson in Plaintiff's presence and told him that Mr. Jalonack was there.  PT 114.2.  Mr. Tyson came up to the Radiology Department on March 21, 2008 and told Plaintiff to go home.  Plaintiff left the Medical Center.  PT 114.13.  There was no open position for Plaintiff at Newark Beth and he was removed from the hospital's employee roll when his 26-weeks of short term disability were exhausted in April of 2008. Lipner Certification at para.22.

**Not Disabled and No Request for a Reasonable Accommodation**

Plaintiff testified that he does not believe that he is disabled.  PT 128.14.

He confirmed under oath that there was no part of his job that he could not perform and that he did not request any accommodations from Defendants.  PT 128.16, PT 129.5. Indeed, Plaintiff testified that he did not know of any accommodation that he might need.  PT 129.1.

The Complaint filed by Plaintiff in this action includes the following factual allegations:

> 3.  On October 19, 2005 (sic) plaintiff suffered a stroke, and after a period of disability he returned to work and **was able to able to assume all of his previous duties and responsibilities.**
>
> 4.  In February, 2007 there was an incident in which Jalonack overreacted to a situation at work, at which time his

employer requested that he undergo both a physical and neuropsychological evaluation to determine if his stroke was impeding his ability to function in his current position.

5. **The evaluations determined that there were no conditions which would impact on Plaintiff's ability to carry out the position of Director of Radiology,** and that he was not at risk to himself or others.

6. In October, 2007 lost his temper due to a subordinate's failure to attend to a patient, at which time Jalonack was suspended and advised to take short term disability. Exhibit 1 to Blunda Certification (Emphasis supplied).

In September of 2008 Plaintiff filed a Two-Count Complaint in the Superior Court of New Jersey alleging that Newark Beth Israel Medical Center and the Saint Barnabas Health Care System violated: (1) the New Jersey Law Against Discrimination by not permitting him to return to work and not engaging in an interactive process; and (2) the Family Medical Leave Act. Since Plaintiff alleged a federal claim, Defendants removed the matter to the United States District Court and filed a Counterclaim.

Defendants now move for summary judgment dismissing the Complaint in its entirety. Defendants are not moving for summary judgment on their counterclaim since it is apparent from deposition testimony that there are disputed facts as to the parties' agreement.

19

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The non-movant then "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In so doing, a non-movant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

As demonstrated below, virtually every material fact in this action in undisputed and the case is uniquely situated for the granting of summary judgment.

**LEGAL ARGUMENT**

**POINT I**

**PLAINTIFF'S FMLA CLAIM FAILS SINCE IT IS IRREFUTABLE THAT HE RECEIVED THE 12-WEEK LEAVE OF ABSENCE FOR SELF CARE THAT HE IS ENTITLED TO UNDER THE ACT.**

Count Two of Plaintiff's Complaint alleges that Defendants' conduct violated the Federal Family and Medical Leave Act, 29 U.S.C. §2601 *et. seq.* ("FMLA"). Simply stated, Plaintiff's claim fails since the documents and testimony establish beyond dispute that he received a twelve-week leave of absence for self care between October 12, 2007 and January 4, 2008. Therefore, Plaintiff was not denied any entitlements under the FMLA and that claim must be dismissed.

**The Protections of the FMLA**

The Family Leave and Medical Act of 1993, 29 U.S.C. §2601, *et seq.*, was enacted to provide leave for workers whose personal or medical circumstances necessitate that they take time off from work in excess of what their employers are willing to provide. Parker v. Hahnemann University Hospital, 234 F. Supp. 2d 478, 483 (D.N.J. 2002) citing Victorelli v. Shadyside Hospital, 128 F.3d 184 (3d. Cir. 1997), citing 29 C.F.R. §825.101. "The Act is intended to 'balance the demands of the workplace with the needs of families by establishing a minimum labor standard for leave' that lets employees 'take reasonable

leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition.'" Parker, 234 F.Supp.2d at 483, citing Churchill v. Star Enters., 183 F.3d 184, 192 (3d. Cir. 1999) (quoting 29 U.S.C. §2601(b)(1), (2); S. Rep. No. 103-3 at 4).

In furtherance of these goals, the FMLA grants an "eligible employee" the right to 12 work-weeks of leave over any 12-month period because of, among other things, a "serious health condition that makes the employee unable to perform the functions" of the employee's position. Sommer v. The Vanguard Group, 461 F.3d 397, 399 (3d. Cir. 2006) citing 29 U.S.C. §2612(a)(1). Subject to certain limitations that are not applicable here, if an eligible employee returns to work during the period of qualified leave, the employee is entitled to reinstatement to his former position or an equivalent one with equivalent employment benefits, pay and other terms and conditions of employment. Id., citing 29 U.S.C. §2614(a)(1).

However, if an employee does not return to work at the end of his medical leave, the FMLA does not require an employer to extend the leave beyond 12 weeks. See, 29 C.F.R. §825.200(a) ("Except in the case of leave to care for a covered service member with a serious injury or illness, **an eligible employee's FMLA leave entitlement is limited to a total of 12 workweeks**...")(emphasis supplied); see also Rinehimer v.

22

Cemcolift, Inc., 292 F.3d 375, 384 (3d Cir. 2002)(citations omitted); Ragsdale v. Wolverine World Wide Inc., 535 U.S. 81, 93 (2002) (emphasizing that the FMLA entitled an employee to "a total of 12 workweeks of leave during any 12-month period[2]" and no more; and "the 12-week figure was the result of compromise between groups with marked but divergent interests" and must be respected.)

**Claims Brought Under FMLA**

To establish a claim under the FMLA, an employee must demonstrate that:

> (1)  He is eligible for rights under the FMLA;
>
> (2)  The defendant employer is subject to the requirements of the FMLA;
>
> (3)  He was entitled to leave under the FMLA;
>
> (4)  He provided notice to the employer regarding his intent to utilize FMLA leave; and
>
> (5)  The employer denied him the benefits to which he was entitled under the FMLA.

See, Parker, *supra*, 234 F.Supp.2d at 483-484; See also, Theodossiou v. Commerce Bank, N.A., 2009 WL 2382218 (D.N.J. 2009). Two causes of action are available under this test: (a) "interference" with substantive rights provided to eligible employees under the FMLA; and (b) "retaliation" for the exercise of FMLA rights. See, Palen v. Alcan Packaging, 511 F. Supp. 2d

---

[2] Citing 29 U.S.C.A. §2612(a)(1)

445, 448 (D.N.J. 2007). Here, there is no retaliation claim pleaded. The narrow focus, therefore, is on the final element of the cause of action – denial of statutory benefits.

To assert an interference claim, "the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them." Palen, supra, 511 F.Supp.2d at 448, citing Sommer, supra, 461 F.3d at 399. An interference action is not about discrimination, it is only about whether the employer provided the employee with entitlements guaranteed by the FMLA. Id. Here, Plaintiff's claim fails because he cannot establish the final element of a prima facie claim – that he was denied benefits to which he was entitled under the FMLA.

The documents and testimony establish beyond dispute that Plaintiff received a 12-week job-protected leave of absence for self-care as required by the FMLA. Plaintiff went on a medical leave of absence effective October 12, 2007. On November 13, 2007, Plaintiff received a notice from Newark Beth Israel Medical Center Human Resources Department confirming that he was on FMLA leave and that his 12-weeks of protected leave would expire January 4, 2008. Lipner Cert. at Exhibit 10. Plaintiff did not return to work in January 2008. By his own testimony and doctor's certification, he was not able to return to until March 20, 2008, more than 22 weeks after his absence from work began. PT 124-125.

24

Newark Beth Israel Medical Center was not obligated under the FMLA to provide to Plaintiff job-protected leave beyond the 12-weeks of leave that expired January 4, 2008. <u>See</u>, <u>29 C.F.R. §825.200(a)</u>; <u>Rinehimer,</u> *supra* 292 F.3d. at 384; <u>Ragsdale</u>, *supra*, 535 U.S. at 93. Since Plaintiff received all of his statutory entitlements under Act, summary judgment must be granted dismissing with prejudice Count Two of the Complaint.

<u>POINT II</u>

**PLAINTIFF'S NJLAD DISABILITY DISCRIMINATION CLAIM FAILS SINCE IT IS UNDISPUTED THAT TWO EXAMINING DOCTORS DETERMINED THAT HE WAS NOT HANDICAPPED AND PLAINTIFF TESTIFIED THAT HE IS NOT DISABLED.**

Count One of the Plaintiff's Complaint alleges that "by not permitting him to return to work," Defendants violated the New Jersey Law Against Discrimination ("NJLAD"), <u>N.J.S.A</u>. 10:5-1, <u>et seq</u>. Complaint at Count One, Paragraph 9. Plaintiff's claim fails for multiple reasons, most significant of which is that he cannot prove the first element of the cause of action – that he is an individual with a handicap. Thus, this claim must be dismissed.

The New Jersey Law Against Discrimination provides at <u>N.J.S.A</u>. 10:5-4.1 that the Act shall be construed to prohibit:

> Any unlawful discrimination against any person because such person is or has been at any time handicapped or any unlawful employment practice against such person, unless the nature and extent of the handicap reasonably precludes the performance of the particular employment.

Here, Plaintiff testified that he is not disabled and the documents and testimony establish beyond dispute that Plaintiff was evaluated by two independent medical professionals in 2007, each of whom determined Plaintiff was able to perform the duties of his job without limitation. Given these facts, Plaintiff clearly was not handicapped within the meaning of the NJLAD.

**Disability Discrimination Under the NJLAD**

To prove disparate treatment disability discrimination under the NJLAD, the New Jersey Supreme Court has embraced the burden shifting framework first outlined by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973). See Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 597 (1988); Anderson v. Exxon Co., 89 N.J. 483, 492 (1982). Under the McDonnell Douglas analysis, Plaintiff bears the initial burden of demonstrating a *prima facie* case of employment discrimination.

To establish a *prima facie* case of disability discrimination based upon an unlawful discharge, plaintiff must establish:

1. He was handicapped within the meaning of the law;

2. He was performing the work at a level that met his employer's legitimate expectations;

3. He was nevertheless fired; and

4. Employer sought another to perform the same work after he was fired.

Maher v. New Jersey Transit Rail Operations, Inc., 125 N.J. 455, 480-481 (1991); Clowes, *supra,* 109 N.J. at 596; Svarnas v. AT&T Communications, 326 N.J. 59, 73 (App. Div. 1999); LaResca v. American Tel. & Tel., 161 F. Supp. 2d 323, 335 (D.N.J. 2001) reconsideration denied.

It has also been stated that the fourth element is flexible and that to prove a claim of disparate treatment discrimination based on disability, the plaintiff may produce evidence that

employees who were not disabled were treated more favorably than the disabled employee. <u>Seiden v. Marina Associates,</u> 315 N.J. Super. 451, 459 (Law Div. 1998).

Under the <u>McDonnell Douglas</u> burden shifting analysis, once a plaintiff successfully demonstrates a *prima facie* case of discrimination, the plaintiff creates a presumption of discrimination and the burden of production shifts to defendants. <u>Bergen Commercial Bank v. Sisler</u>, 157 N.J. 188, 210 (1999). However, the "mere assertion of discrimination unsupported by any facts is not sufficient to shift the burden to the employer[.]" <u>Reilly v. Prudential Property and Casualty Ins. Co.</u>, 653 F. Supp. 725, 730 (D.N.J. 1987).

To satisfy their burden of production, defendants need only articulate a legitimate, non-discriminatory reason for the adverse employment decision. <u>See</u> <u>Anderson v. Exxon, Inc.</u>, 89 N.J. at 492; <u>Kearny Generating Sys. Div. v. Roper</u>, 184 N.J. Super. 253, 259 (App. Div.) (noting that "persuasion that the articulated reason was the motivating reason is not essential"), <u>certif.</u> <u>denied</u>, 91 N.J. 254 (1982); <u>see also</u> <u>Texas Dep't of Comm. Affrs. v. Burdine</u>, 101 S. Ct. 1089, 1094 (1981) (noting that the employer does not have "the burden of persuading the Court that it had convincing, objective reasons" for the employment decision in question).

Once the defendant articulates a legitimate, non-

discriminatory reason for the challenged conduct, the presumption of discrimination drops from the case.  Bergen Commercial Bank v. Sisler, 157 N.J. at 211; see also St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2474, 2747 (1993).  The plaintiff then bears the burden of demonstrating that the proffered reason is really pretext for intentional discrimination.  Anderson v. Exxon, Inc., 89 N.J. at 492.  To satisfy this burden, the plaintiff must prove that defendant's "reasons are false and that discrimination was the real reason."  EEOC v. MCI Int'l, Inc., 829 F. Supp. 1438, 1449 (D.N.J. 1993).  Indeed, the plaintiff retains the burden of persuasion throughout the entire case.  Bergen Commercial Bank v. Sisler, 157 N.J. at 211.

**1. Plaintiff is not an individual with a handicap under the NJLAD**

In this case, Plaintiff cannot establish the first element of a *prima facie* case of disability discrimination – that he was an individual with a handicap within the meaning of the NJLAD. The NJLAD defines the term "disability" as:

> ...physical disability, infirmity, malformation or disfigurement which is caused by bodily injury, birth defect or illness including epilepsy and other seizure disorders...
> or any mental, psychological or developmental disability resulting from anatomical, psychological, physiological, or neurological conditions...**which prevents the normal exercise of any bodily or mental function or is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques**...

N.J.S.A. 10:5-5(q) (emphasis ours).

Plaintiff apparently contends that he was disabled because he suffered a stroke in October of 2004. However, the undisputed facts are that subsequent to the stroke Plaintiff suffered in 2004, he returned to work at Newark Beth Israel Medical Center in 2005 where he continued to work without limitation. PT 57.6. As a result of a series of incidents with employees and patients, in May of 2007, the management of Newark Beth Israel Medical Center referred Plaintiff for evaluation to determine his fitness to perform the functions of Administrative Director of Radiology. He agreed. He first underwent a physical evaluation by stroke neurologist Anna Khanna, M.D., who determined that:

> On examination, the patient does not have any significant limitations that might limit his ability to perform his duties as Director of Radiology at Newark Beth Israel.

Blunda Cert. Exh. 3; Lipner Dep. Exh. 5 at D0237.

Dr. Khanna referred Plaintiff to neuro-pyschologist James Hill, who, according to Plaintiff, conducted a "thorough" physical and psychological evaluation that lasted 2 months. He then issued a report in September of 2007, concluding that:

> The results of the current assessment as detailed above found **NO EVIDENCE OF A NEUROPSYCHOLOGICAL OR PSYCHOLOGICAL IMPAIRMENT THAT WOULD IMPACT MR. JALONACK'S ABILITY TO FUNCTION IN HIS CURRENT**

> **POSITION**...There is no need for any further neuropsychological or psychological treatment or intervention with Mr. Jalonack, he has had a remarkable and impressive recovery from his stroke.

Blunda Cert. Exh. 4; Lipner Exhibit 6 at D0232-33.

Therefore, it is undisputed that after examination and evaluation, both physicians advised Newark Beth Israel Medical Center that Plaintiff was able to perform his duties as the Director of Radiology without limitation. Indeed, Plaintiff's Complaint in this matter pleads that:

> The evaluations determined that there were no conditions which would impact on Plaintiff's ability to carry out the position of Director of Radiology...
>
> Complaint at Paragraph 5.

Given this record evidence, Plaintiff cannot establish that he suffered from a condition that "prevent[ed] the normal exercise of any bodily or mental function..." or that its effects were "demonstrable, medically or psychologically..." See, N.J.S.A. 10:5-5(q). Thus, Plaintiff was not handicapped within the meaning of the NJLAD, and summary judgment as to Count One is proper.

## 2.   **Plaintiff was not performing at a level that met his employer's legitimate expectations.**

In this case Defendants contend that Plaintiff would have been terminated for misconduct in October of 2007, but for his agreement to leave their employ on a pathway of short term

disability followed by long term disability.  Plaintiff admits under oath that after the October 2, 2007 incident management at Newark Beth Israel told him there was no job for him at Newark Beth but that termination was not going to be utilized because he was leaving on disability.  PT 96.9; 98.3 – 99.3; 77.2; 100.21.  However, Plaintiff now contends that he never agreed to leave on long term disability.  Viewing that contention in a light most favorable to Plaintiff for purposes of summary judgment, he nonetheless cannot establish a *prima facie* case of disability discrimination for yet a second reason.  It is crystal clear that Plaintiff was not performing at a level that met his employer's legitimate expectations.

Defendants will not repeat the entire chronology.  Suffice it to say that between February of 2007 and October of 2007 Plaintiff became embroiled in a series of inappropriate incidents with subordinate employees, patients and their families that included both physical and verbal misconduct. These events were reported to management and investigated.  They led to the referral of Plaintiff for evaluation by two doctors. Following his medical and psychological clearance, Plaintiff had yet another altercation with a subordinate employee and a patient's family member on October 2, 2007.

It cannot be seriously disputed that a Medical Center has a reasonable expectation that its administrative staff will not

32

yell at employees in public, throw their lunch pails on the floor, bang lockers, embarrass employees in front of patients and yell at patients' family members.   Consequently, Plaintiff cannot establish the *prima facie* requirement that he was performing at a level that met his employer's reasonable expectations and his claim of disability discrimination must be dismissed for yet a second reason.

**3.   Even if Plaintiff could establish a *prima facie* case of disability discrimination, he cannot establish that the stated reasons for him not being permitted to return to work on March 20, 2008 are pretextual.**

Assuming for argument sake that Plaintiff could establish all of the elements of a *prima facie* cause of action for disability discrimination, his claim nonetheless fails since he cannot establish pretext.   Defendants assert that Plaintiff agreed to leave their employ based on the long term disability pathway.   He disputes this agreement.   Nonetheless, it is undisputed that Plaintiff left on a medical leave of absence effective October 12, 2007 and did not return before his job-protected 12 month FMLA leave expired on January 4, 2008.   [See Point I above].   Thus, he had no right to return to his previous position after January 4, 2008.

Moreover, it is established that Newark Beth Israel Medical Center posted for the position of Administrative Director of Radiology on January 8, 2008 and thereafter interviewed

candidates for the position.   Applicant Stephanie Spencer was offered the job on March 4, 2008 and accepted on March 7, 2008. Lipner Cert. at ¶18-20; Exh. 13.   Consequently, there was no position for him to fill on March 20, 2008.

Therefore, the Defendants have articulated non-discriminatory reasons for not permitting Plaintiff to return to the position of Director of Radiology on March 20, 2008.  First, he made an agreement to do otherwise in lieu of termination in October of 2007.   Second, the position had been filled, as allowed by law, after his job protected leave of absence expired on January 4, 2008.   Thus, the burden shifts to Plaintiff to establish that the stated reasons are a pretext and that the true reason is disability discrimination.

New Jersey courts have made clear that the burden on a plaintiff to establish pretext is not *de minimis*:

> [T]he plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a fact-finder reasonably to infer that each of the employer's proffered non-discriminatory reasons...was either a <u>post hoc</u> fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)…[To do so,] the non-moving party must demonstrate such weaknesses, implausibility, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could rationally find them "unworthy of credence" ...and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons."

Greenberg v. Camden Voc. Schools, 310 N.J. Super. 189, 200 (App. Div. 1998)(quoting Fuentes v. Perskie, 32 F.3d. 759, 764-65 (3d Cir. 1994)).

There is no competent evidence in the record to support Plaintiff's burden of proving pretext. Consequently, his claim of disability discrimination fails for three distinct reasons and Count One must be dismissed.

## POINT III

**PLAINTIFF FAILS TO ESTABLISH A CLAIM OF FAILURE TO REASONABLY ACCOMMODATE A DISABILITY SINCE (1) HE WAS NOT DISABLED; (2) HE DID NOT REQUEST AN ACCOMMODATION; AND (3)IGNORING MISCONDUCT IS NOT A REASONABLE ACCOMMODATION.**

Plaintiff's Complaint vaguely alleges in Paragraph 9 that Defendants "failed to engage in an interactive process." This "claim" warrants little comment. It is factually undisputed that: (1) in May of 2007 the Vice-President of Human Resources and the Chief Operating Officer met with Plaintiff to discuss his performance/behavioral issues and referred him for evaluation by two specialists to determine if there was a medical or psychological condition that had to be addressed. Plaintiff agreed; (2) in 2007 it was established by two independent medical evaluators that Plaintiff was not disabled in any manner, had no job-related limitations and did not require any treatment; (3) plaintiff testified that he could

perform all functions of his job; (4) plaintiff testified that he never requested any form of accommodation despite multiple meetings with the HR Vice-President and Chief Operating Officer relating to his job performance; and (5) plaintiff testified that he is unaware of any form of accommodation that he would need.

An individual who is not handicapped is not entitled to accommodations under the NJLAD.   The New Jersey Administrative Code provides that:

> ...[a]n employer must make a reasonable accommodation to the limitations of an employee or applicant **who is a person with a disability** unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business...

N.J.A.C. 13:13-2.5(b) (emphasis ours).  Moreover, our Appellate Division has recognized that "[a]n employer's duty to accommodate extends only so far as necessary to allow '**a disabled employee to perform the essential functions of his job.** It does not require acquiescence to the employee's every demand.'" (emphasis ours) Tynan v. Vicinage 13 of the Superior Court, 351 N.J. Super. 385, 397 (App. Div. 2002), citing Vande Zande v. State of Wis. Dep't of Admin., 851 F. Supp. 353, 362 (W.D. Wis. 1994) (citations omitted); Jones v. Aluminum Shapes, 339 N.J. Super. 412 (App. Div. 2001).

Thus, Newark Beth Israel Medical Center was not obligated to provide a reasonable accommodation to Mr. Jalonack since he was not handicapped.  Furthermore, an interactive process took place with him in May of 2007 and led to evaluations that proved that absence of handicap and Plaintiff confirmed that he never requested, wanted or needed any form of accommodation of a non-existent handicap.

Finally, it is established that disability cannot be used to excuse misconduct.  Barbara v. DiMartino, 305 N.J.Super. 617 (App. Div. 1997).  Indeed, the NJLAD expressly provides that it shall not preclude discrimination amongst individuals "on the basis of competence, performance, conduct or other reasonable standards."  N.J.S.A. 10:5-2.1.  Thus, in Barbera v. DiMartino, 305 N.J. Super. at 633, the Appellate Division cited this section of the NJLAD and noted that:

> Thus, by its express language, LAD does not prevent adverse employment treatment based upon the employee's, or prospective employee's, conduct.  Cf. A.B.C. v XYZ Corp., 282 N.J. Super. 494, 509 (App. Div. 1995) (Petrella, P.J.A.D., concurring)
>
> The principle invoked by Judge Petrella is recognized by the overwhelming majority of Federal Courts that have interpreted, in similar context, the Americans With Disabilities Act, 42 U.S.C.A. § 12101 to § 12213, and the Rehabilitation Act, 29 U.S.C.A. § 701 to § 797b.  It is the almost universal view that the federal laws are intended to prevent discrimination premised upon a handicap or disability, not upon

egregious or criminal conduct even if such conduct results from the handicap or disability.  305 N.J. Super. at 636.

Thus, any attempt by Plaintiff to assert that his inappropriate workplace behavior should somehow be "accommodated" is directly contrary to the law.

To the extent that it is argued, Plaintiff's claim of failure to reasonably accommodate a disability is completely without merit.


## CONCLUSION

For all of these reasons, Defendants respectfully submit that Plaintiff's Complaint is completely without merit and must be dismissed.

Respectfully submitted,

APRUZZESE, McDERMOTT,
MASTRO & MURPHY
25 Independence Boulevard
P.O. Box 112
Liberty Corner, New Jersey 07938
(908) 580-1776
Attorneys for Defendants


Dated: November 13, 2009         /s/ Ryan S. Carey_
                                 RYAN S. CAREY
                                 MARK J. BLUNDA


S:\SS\Hospitals - Active\Newark Beth Israel Medical Center\Jalonack, Richard\Pleadings\Motion for
SJ (Brief).doc